Hillsborough,
No. 5021.

ALBERT LEVITT *v.* ATTORNEY GENERAL & *a.*

Argued February 7, 1962.

Decided March 22, 1962.

*Albert Levitt,* pro se, and *Maurice M. Blodgett* (*Mr. Levitt* orally), for the plaintiff.

*William Maynard,* Attorney General, and *Elmer T. Bourque,* Deputy Attorney General (*Mr. Bourque* orally), for the defendants.

Duncan, J. Chapter 275 of the Laws of 1961 (RSA 66:3-6 (supp)) which is the center of attack in this proceeding was enacted pursuant to provisions of the Constitution of this state which require the Legislature to "make an apportionment of representatives according to the last general census of the inhabitants of the state" every ten years after 1951. Const., Pt. II, *Art.* 9th. It is contended that the 1961 act does not conform to the requirements of Part II, *Art.* 9th, and was not validly enacted; that if it does conform to *Art.* 9th, Article 9th itself is unconstitutional because in conflict with Part I, *Art.* 11th of the Constitution, and is invalid because not constitutionally adopted; and finally that the statutes (RSA 66:3-6 (supp) and RSA 66:8) and Part II, *Arts.* 9th and 11th of the Constitution are unconstitutional because violative of the Fourteenth Amendment to the Constitution of the United States.

The cornerstone of the plaintiff's argument is that every inhabitant is entitled to vote and to be voted for in every election of representatives to the General Court, by virtue of the provisions of Article 11th of the Bill of Rights. Const., Pt. I, *Art.* 11th. While in *Opinion of the Justices,* 101 N. H. 523, we advised the Senate that the Legislature could not by legislative act provide for representation of each town and ward in the House of Representatives at each session of the Legislature, because of the requirements of Articles 9th and 11th of Part II of the Constitution, the proponents of the bill concerning which advice was sought placed no special reliance upon Article 11th of the Bill of Rights, and it was not expressly referred to by the opinion. Nor was the validity of the adoption of Articles 9th and 11th as amendments to the Constitution then called in question.

At the outset, evaluation of the plaintiff's arguments requires examination of his contentions that Laws 1961, ch. 275 (RSA 66:3-6 (supp)) was not validly enacted, and that the amendments to the Constitution appearing in Part II, Articles 9th and 11th were not validly adopted in 1941 and 1942. For reasons hereinafter stated, neither of these contentions is adopted.

Laws 1961, ch. 275 by its first section establishes a new apportionment of full and part-time representation for the various towns and wards of the state upon a basis stated by section 3 of the act to be that of "one representative from any town or ward having eight hundred and twenty-two inhabitants." The act originated as House Bill 480. The Bill was passed by the House of Representatives on June 28, 1961. Journals of the House (1961 session), *p.*

1080. Prior to passage, it was amended in several particulars which are set forth in detail in the journal. Journals of the House, *supra*, *pp.* 1056-1057, June 28, 1961.

Senate action upon the bill was taken on June 30, 1961, after the bill had been referred to the Senate Judiciary Committee on the preceding day, and a public hearing held earlier on June 30, 1961. Journals of the Senate (1961 session), *pp.* 925, 970, June 29, 30, 1961. When the bill was reported in, it was explained to the Senate that the amendments to the bill were offered by the House, and not by the Senate Committee. Journals of the Senate, *supra*, 981 (June 30, 1961). Following discussion, and defeat of an amendment offered from the floor (*Id.*, 982), the bill was passed under suspension of the rules. *Id.*, 983.

As engrossed, and as published with the Laws of 1961, section one of the chapter provides in one paragraph that there shall be "two representatives" from "Portsmouth ward 3," and in the following paragraph "three representatives" from "Portsmouth ward 3." Laws 1961, 275:1. As noted in the published session laws, the latter provision "does not conform to the amendment adopted by the House of Representatives as appears in the Journal of June 28, 1961."

The plaintiff contends that the act was not validly adopted. This depends in part upon whether House Bill 480 as passed by the Senate included the amendments previously adopted by the House providing for only two representatives from Portsmouth ward 3. While publication of an act as one of the statutes enacted at a legislative session is prima facie evidence of valid enactment (*Opinion of the Justices*, 103 N. H. 402, 412) it is also established that the journals of the two houses are to be accepted as conclusive evidence of the proceedings of those bodies. *Id.*, 411. The journal of the House for June 28, 1961 makes it plain that the bill as passed by the House contained a provision that Portsmouth ward 3 should have two representatives, and no provision that it should have three. Journal of the House, *supra*, 1056-1057.

We find no evidence in the Senate journals that any different version of the bill was passed by the Senate. The Senate journal makes it plain that the amendments adopted by the House were before the Senate. Journals of the Senate, *supra*, 981. The House amendments revised the bill in some thirteen particulars. Twelve of these changes appear in the four sections of the published act, including the provision that Portsmouth ward 3 shall have two

representatives. Laws 1961, ch. 275 *supra.* The provision of the House amendment by which Portsmouth ward 3 was deleted from the paragraph listing places entitled to three representatives is the only provision of the amendment not reflected by the act as published and engrossed.

We are satisfied from our examination of the journals that the bill passed the Senate in the same form in which it passed the House, and that the provision that Portsmouth ward 3 should have three representatives was adopted by neither body.

It is evident however that by clerical error the bill as engrossed, and signed by the President of the Senate, the Speaker of the House, and the Governor contained the error by which Portsmouth ward 3 would be entitled to three representatives, in addition to two as stated in the preceding paragraph of the section. The effect of the error would be to increase the membership of the House to more than four hundred in violation of *Art.* 9th, Part II of the Constitution.

Since the approval of a bill by the Governor, attested by his signature, is essential to its valid enactment (*Opinion of the Justices,* 76 N. H. 601, 605), the question is whether the bill as passed by the Legislature would have received that approval. It is obvious that it would have, since the bill would comply with *Art.* 9th of the Constitution with the erroneous provision deleted, but not if it were retained. The case is clearly not one where the provisions, including the one intended by the Legislature to be deleted, were "intended . . . as a whole" and would not otherwise have been adopted. *Opinion of the Justices, supra,* 605. On the contrary, the situation is one in which "the portion which conflicts with the constitution . . . must be treated as a nullity" and "[t]he constitutional . . . provisions . . . may stand though [the unconstitutional provisions] fall." *Id.,* 604, 605.

It follows that the provision appearing in brackets in chapter 275 of the 1961 session laws is a clerical error not properly a part of the act and that the balance of the act is valid. *Opinion of the Justices,* 103 N. H. 402, 414.

As previously indicated, the plaintiff also contends that Articles 9th and 11th of Part II of the Constitution inserted by amendment in 1942 are invalid because not constitutionally adopted. This contention is based upon a variety of propositions, but fundamentally upon the assertions that the Constitutional Convention of 1938 was without authority to reconvene in 1941; that the question

submitted by the Convention to the people in 1942 did not adequately inform the voters of the nature of the amendment proposed. (*Concrete Co.* v. *Rheaume Builders,* 101 N. H. 59); and that the popular vote upon the amendment proposed by the Convention was defective because voters in unincorporated places were not permitted to vote. We find no sound basis for these and related contentions.

The authority of a Constitutional Convention to reconvene itself for the purpose of proposing further amendments, is one which was exercised by the first convention to amend the Constitution of 1784. This Convention met in 1791, and later reconvened in two additional sessions in 1792. See N. H. Constitutional Convention Manual (1918) *pp.* 96-125. Similarly, the next Constitutional Convention assembled twice; first in 1850, and again in 1851. *Id.,* 126-151. The procedure thus followed, which was also followed by the 1918, 1938 and 1955 Conventions, has not been called in question until now. It is in no way inconsistent with any provisions of the Constitution relating to its amendment. Const., Pt. II, *Arts.* 99 and 100. Nor was the reconvention of the 1938 Convention inconsistent with legislative authorization. Laws 1937, *c.* 187; Laws 1941, *c.* 251. We find no reason to question the validity of its action. See *Opinion of the Justices,* 102 N. H. 565; *Rix* v. *Asadoorian,* 103 N. H. 330; *Opinion of the Justices,* 103 N. H. 333.

The question submitted to the voters following the session held in 1941 (see Journal of the Constitutional Convention (1941) *pp.* 97-98) was sufficiently understandable to the ordinary voter, and discloses no defect which could reasonably be thought to overcome the strong presumption of validity which the adoption of such amendments enjoys. *Concrete Co.* v. *Rheaume Builders,* 101 N. H. 59, 61.

There is no evidence before us that any qualified voters of unincorporated places were deprived of an opportunity to vote upon the amendment submitted in 1942. The N. H. Manual for the General Court No. 28 (1943), *p.* 441 shows that the inhabitants of Millsfield did in fact vote. Only five other unincorporated places had inhabitants according to the previous census, (*Id.,* 254-256, 276) and their total vote could not have affected the outcome of the referendum, assuming, without evidence, that they were qualified to vote and did so. *Id.,* 429. See RSA 53:1.

We regard as valid and subsisting the amendments to Articles 9th and 11th of Part II of the Constitution as adopted by the people

in 1942. Accordingly we now reach the constitutional issues relating to these Articles which are presented by the plaintiff's argument.

Article 11th, Part I of the Constitution provides in part: "All elections ought to be free, and every inhabitant of the state, having the proper qualifications, has equal right to elect, and be elected, into office . . . . " The plaintiff points out that this is a part of the Bill of Rights which as stated in *State* v. *Express Company,* 60 N. H. 219, 250 is a statement of "rights reserved by the grantors of public power. The reservation precedes the grant. [The grantors] therein reserve those personal liberties, which . . . they think cannot safely be surrendered to government." From this the plaintiff argues that RSA 66:3-6 (supp) and *Art.* 9th, Part II which they implement, "cannot be construed to be consonant with" Article 11th of the Bill of Rights, and therefore may not be enforced.

Article 11th, Part I was a part of the original Constitution on its adoption in 1784. The same instrument, by *Art.* 9th, Part II established as a basis for entitlement to one representative that a "town, parish, or place entitled to town privileges" should have "one hundred and fifty rateable male polls of twenty one years of age and upwards"; and for each additional representative "three hundred such rateable polls." R. S. (1842) *p.* 24. *Art.* 10th, Part II, provided for districting or classing places having less than 150 polls; and under Article 11th a place which could not conveniently be classed in a district might obtain authority to elect a representative.

By 1876 increases in the size of the House from 91 to 393 members (N. H. Const. Conventions, N. H. State Library Legislative Service (1956) *p.* 1), coupled with abuses in the determination of the numbers of "rateable polls," made a change in these provisions imperative. See Journal of the Constitutional Convention (1876) *pp.* 217-220. The Constitution was then amended to make population rather than rateable polls the basis for representation, establishing "six hundred inhabitants" as the requirement for the first representative, twelve hundred for each additional representative. Article 11th, Part II of the Constitution was also amended to provide for the first time for representation, for a proportionate part of the time only, of places of less than six hundred inhabitants. See Journal of the Constitutional Convention (1876) *pp.* 230-252. Thus the need for legislative apportionment first arose. Laws 1877, *c.* 76. The same Convention rejected proposals to create voting

districts as now suggested by the plaintiff. Journal, *supra,* 59-60, 133.

Later, in 1889, the provisions for classification of towns were eliminated by striking out Article 10th of Part II of the Constitution. Journal of the Constitutional Convention (1889) *pp.* 248-9.

As was said in *Thompson* v. *Kidder,* 74 N. H. 89, 91: "While the constitution as it now stands is to be considered as a whole as if enacted at one time, to ascertain the meaning of particular expressions it may be necessary to give attention to the circumstances under which they became parts of the instrument. The whole is to be considered and the true meaning to be drawn from the consideration of every part." To paraphrase what was also then said: "The purpose to authorize [representation for a proportionate part of the time] being clear, the intent to avoid any existing provision [of Art. 11th, Pt. I] contrary thereto follows . . . because it cannot be inferred it was intended to make a useless grant." *Id.,* 96.

The amendments to Articles 9th and 11th which were adopted in 1942 were but modifications of a system of electing representatives originating with the Constitution itself, a system which has continued over the intervening years, with infrequent alterations to meet changing conditions.

Amendments thus validly adopted are not to be invalidated because the broad reservation stated in Article 11th of the Bill of Rights was not revised at the same time. To the extent that these amendments may be thought to have qualified Article 11th of the Bill of Rights, such qualification was implicit in adoption of the amendments. The right to elect and be elected into office protected by Article 11th is not absolute. See *State* v. *Sullivan,* 101 N. H. 429; *Wilkes* v. *Jackson,* 101 N. H. 420.

Finally the plaintiff suggests that if establishment of new voting districts would be unconstitutional under the present Constitution, as we now hold, then the statutory provisions which he attacks, and inferentially Articles 9th and 11th of Part II of the Constitution, are invalid because in conflict with the Fourteenth Amendment to the Constitution of the United States.

The statute and constitutional provisions in question pertain solely to the election of representatives to the State Legislature, and are not without rational basis. See Bone: Attempts to Comply With Reapportionment Requirements, 17 Law & Contemporary Problems, 387, 405-406. The rights which the plaintiff seeks to protect derive from state citizenship, and the relationship of

the citizen and his state established by state law. *Snowden* v. *Hughes,* 321 U. S. 1, 7. See *Colegrove* v. *Green,* 328 U. S. 549; *Scholle* v. *Secretary of State,* 360 Mich. 1, 85-86. See also, Comment: Federal Constitutional Limitations on State Power Over Political Subdivisions, 61 Colum. L. Rev. 704, 706; Lewis, Legislative Apportionment, 71 Harv. L. Rev. 1057, 1077-1078.

We are of the opinion that the defendants' motion to dismiss should be granted. While the plaintiff is not alone in believing that the constitutional methods of choosing representatives to the General Court could be improved upon (see Dishman, A New Constitution for New Hampshire (1956) *pp.* 27-44), his forum might better be a Constitutional Convention than a court.

*Remanded.*

All concurred.

On renewed motion for rehearing. After the foregoing opinion was filed, the United States Supreme Court on March 26, 1962 decided *Baker* v. *Carr,* 369 U. S. 186, and on April 23, 1962, *Scholle* v. *Hare,* 82 S. Ct. 910. The plaintiff herein filed a "renewed motion for rehearing" under date of May 2, 1962, inviting attention to these decisions of the United States Supreme Court.

*Albert Levitt,* pro se, and *Maurice M. Blodgett,* for the motion.

Duncan, J. As we read the opinions in *Baker* v. *Carr,* 369 U. S. 186 and *Scholle* v. *Hare,* 82 S. Ct. 910, the issue presented by cases such as the one before us is whether an existing system of representation may be thought to rest upon rational considerations and permissible classification. In the opinion in this case filed on March 22, 1962, it was stated that the provisions of the New Hampshire Constitution and statutes called in question by the plaintiff "are not without rational basis" and we reaffirm that view. We recognize that the questions presented by the plaintiff's contentions are justiciable. The final sentence of the original opinion was intended to indicate that the plaintiff's contentions did not merit adoption by the court.

*Plaintiff's renewed motion for rehearing denied.*

All concurred.

May 11, 1962.