Hillsborough,
No. 5043.

ALBERT LEVITT

*v.*

WILLIAM MAYNARD, *Attorney General & a.*

Argued June 6, 1962.
Decided July 16, 1962.

*Albert Levitt*, pro se and *Maurice M. Blodgett* (*Mr. Levitt* orally), for the plaintiff.

*William Maynard*, Attorney General and *Alexander J. Kalinski*, Assistant Attorney General (*Mr. Kalinski* orally), for the defendants.

KENISON, C. J.  The plaintiff seeks a declaratory judgment that the apportionment of senatorial districts by the method provided in the State Constitution and the manner provided by Laws 1961, *c.* 273 is unconstitutional, and in particular in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution.  Procedurally we pause only momentarily. "For more than half a century pleading and procedure in this jurisdiction has been a means to an end and it should never become more important than the purpose which it seeks to accomplish." *Ricker* v. *Mathews*, 94 N. H. 313, 318.  Bearing this tradition in mind we hold (a) that the plaintiff has standing to bring this petition; (b) that a petition for declaratory judgment is a proper remedy (RSA 491:22); and (c) that this court has jurisdiction to review the issues raised whether denominated political or constitutional. "A petition for a declaratory judgment is particularly appropriate to determine the constitutionality of a statute when the parties desire and the public need requires a speedy determination of important public interests involved therein." *Chronicle &c. Pub. Co.* v. *Attorney General*, 94 N. H. 148, 150.  Accordingly, we proceed to the merits of the plaintiff's claims.

Our Constitution provides that the Senate shall consist of twenty-four members. N. H. Const., Pt. II, *Art.* 25th. The next article provides how the senatorial districts shall be constituted. "[Art.] 26th. [Senatorial Districts, How Constituted.] And that the state may be equally represented in the senate, the legislature shall, from time to time divide the state into twenty-four districts, as nearly equal as may be without dividing towns and unincorporated places; and in making this division, they shall govern themselves by the proportion of direct taxes paid by the said districts, and timely make known to the inhabitants of the state the limits of each district."

A shorthand description of the situation prior to 1961 is found in Baker, State Constitutions: Reapportionment, *p.* 12 (1960): *"Apportionment based on direct taxes.* New Hampshire is the only state which has carried the principle of 'no taxation without representation' to its ultimate conclusion. Its Senate districts are determined 'by the proportion of direct taxes paid by the said districts.' Districts were last established in 1915 and undoubtedly need revising, although curiously enough, the old tax apportionment is not too far removed from what a 1950 population standard would yield, and urban areas are not under-represented. The three largest cities, with 27 per cent of the state's population, elect an average of seven out of twenty-four senators. It is likely that taxes paid in any state generally correlate with the degree of urbanism."

Concededly the apportionment of senatorial districts on the basis of taxes is unique and may be "quaint." Baker, *supra, p.* 25. The real question is whether it produces a representation which is rational and without invidious discrimination. Since 1915 no substantial progress was made in Senate redistricting until an interim study committee was appointed by Laws 1955, *c.* 377. The report of that committee was made on January 30, 1957. House Journal (1957) *pp.* 145-147. A further report was made by a special Senate redistricting committee on April 13, 1959. Senate Journal (1959) *pp.* 349-354. The matter was again considered in the 1961 session (see Senate Journal (1961) *pp.* 933-934) and finally resulted in the redistricting act (Laws 1961, *c.* 273) which is now under attack.

The constitutional provisions of Part II, Art. 26th (unlike those relating to the House which are geared primarily to population) that the Legislature in creating twenty-four senatorial districts

"shall govern themselves by the proportion of direct taxes paid . . . " have been carried out by the use of equalized valuations. The direct state tax (RSA 76:8) has ceased to be "a source of funds by which obligations of the state have been met" since the enactment of the tobacco tax law in 1939. *Opinion of the Justices,* 101 N. H. 518, 522. The tobacco tax law (RSA 78:20) provides that while it is in effect "no direct state tax shall be levied on the cities and towns." However apportionment statutes continue to be enacted to determine the apportionment of direct county taxes and for other purposes. RSA 29:11; *Opinion of the Justices, supra;* RSA 71-11 V; Laws 1957, c. 102.

The equalized valuation of the twenty-four senatorial districts is determined by dividing the total equalized valuation of the state which is $2,618,156,082 (Laws·1961, c. 159) by twenty-four, which produces an average equalized valuation of $109,000,000 in round figures. The plaintiff attacks the redistricting statute because of the variation in the equalized valuation of the twenty-four districts. In round figures the equalized valuation of five districts is $115,000,000, of three $100,000,000, of two $117,000,000, of two $113,000,000 and of two $98,000,000. Only one district has a valuation of $109,000,000, the remaining districts vary from a low of $96,000,000 in one district to a high of $122,000,000 in another district.

It is to be noted that the division of the twenty-four senatorial districts is not required to be mathematically exact since the governing article (N. H. Const., Pt. II, *Art.* 26th) states that the division shall be "as nearly equal as may be without dividing towns and unincorporated places." These variations in equalized valuation, which represent the variation in direct taxes, are to some extent inevitable and in some degree unavoidable due to geography and contiguity. The variations have not produced, nor were they designed to produce, an imbalance in urban, suburban and rural representation. David & Eisenberg, Devaluation of the Urban and Suburban Vote (Bureau of Public Administration, University of Virginia) Table 4, *p.* 5 (1961). The minimum per cent of the 1960 population necessary to elect a majority of the Senate is 45.3 per cent, a percentage which compares favorably to other systems which are more recent. See National Municipal League, Compendium on Legislative Apportionment (1962 *ed.*); Dishman & Knapp, A New Constitution for New Hampshire?, ch. 4 (1956).

The maximum variation of equalized valuation from the average on a percentage basis in round figures for fifteen senatorial districts is 4 + per cent. Of these districts the highest is 4.67 per cent and the lowest is 4.20 per cent. The remaining nine have a 3 + per cent variation, the highest being 3.96 per cent and the lowest 3.67 per cent.

The equalized valuation formula used by the Legislature in redistricting the state into twenty-four senatorial districts (Laws 1961, c. 273) is not mathematically perfect. However there is no evidence in the record in this case, or any that has been called to our attention, or any that research has disclosed which would indicate that the statute in fact produced an impermissible classification or an invidious discrimination. Lewis, Decision on Reapportionment Points Up Urban-Rural Struggle, N. Y. Times, April 1, 1962, s. 4, p. 3, col. 8. Cf. Levitt v. Attorney General, 104 N. H., 100, 108.

We have read and reread the various opinions in *Baker* v. *Carr*, 369 U. S. 186 and *Scholle* v. *Hare*, 82 S. Ct. 910, but are not convinced that they can be construed to constitute a condemnation of the admittedly unique method employed in this state. See Lewis, Legislative Apportionment, 71 Harv. L. Rev. 1057 (1958). While the author of this opinion or some members of this court may not be enchanted with the present method of determining senatorial districts, we cannot say that it is without rational basis or that it has produced an unrepresentative selection for the upper house of the Legislature. We conclude that it does not violate the equal protection clause of the Fourteenth Amendment to the United States Constitution, and is not in violation of our own Constitution. Some leeway in the political process is inevitable since " . . . the machinery of government would not work if it were not allowed a little play in its joints." Mr. Justice *Holmes* in *Bain Peanut Co. of Texas* v. *Pinson*, 282 U. S. 499, 501.

*Petition dismissed.*

All concurred.