**Albert LEVITT, Plaintiff,**

v.

**Robert STARK, Secretary of State of the State of New Hampshire, William Maynard, Attorney General of the State of New Hampshire, John W. King, Governor of the State of New Hampshire, Defendants.**

**Civ. A. No. 2446.**

United States District Court
D. New Hampshire.
May 20, 1964.

Albert Levitt, pro se, Maurice M. Blodgett, Peterboro, N. H., for plaintiff.

Alexander J. Kalinski, Asst. Atty. Gen., for the State of New Hampshire, Concord, N. H., for defendant.

Before WOODBURY, Circuit Judge, and CONNOR and CAFFREY, District Judges.

WOODBURY, Circuit Judge.

The plaintiff is a citizen of the United States and of the State of New Hampshire residing in the Town of Hancock.[1] In this proceeding he challenges the validity under the Equal Protection Clause of the Fourteenth Amendment of the State constitutional and statutory provisions governing the election of members of the New Hampshire Senate and House of Representatives. Previously he made the same challenges by petitions for declaratory judgments in the State Superior Court which were reserved and transferred without ruling to the Supreme Court of New Hampshire. His petitions were there considered on the merits and ordered dismissed, Levitt v. Attorney General, 104 N.H. 100, 179 A.2d 286, 180 A.2d 827 (1962); Levitt v. Maynard, 104 N.H. 243, 182 A.2d 897 (1962), and he did not seek review by the Supreme Court of the United States as he might have done, if not by direct appeal, certainly by certiorari. See Title 28 U.S.C. § 1257(2) (3). His failure to prosecute his state cases to the end raises a jurisdictional question.

It certainly wastes judicial time and effort for a litigant to proceed part way toward a final and determinative decision of a federal constitutional question by the state court route and then voluntarily to abandon that route and start all over again in a federal court. We are not aware of any good reason for sanctioning such a dilatory and wasteful procedure. When asked at oral argument why he had not sought review of the State Supreme Court decisions by the United States Supreme Court, the plaintiff's only answer was an assertion of his right to start anew in the federal courts. This answer suggests that the plaintiff may well be more interested in litigation for its own sake than in a final and authoritative determination of his federally guaranteed rights and the like rights of those persons similarly situated who by self appointment he professes to represent. However, for reasons to appear presently we pass this jurisdictional question for the present as we do the federal constitutional questions posed by the plaintiff.

Under Article 9th of Part 2 of the Constitution of New Hampshire the members of the House of Representatives are elected biennially from the towns and wards, and the whole number of representatives to be chosen shall not be less than 375 or more than 400. And every ten years in the year following the taking of the national census the legislature is directed to make an apportionment of representatives among the several towns and wards so that: "The number of inhabitants necessary to entitle any town or ward to representatives additional to the first shall be for each additional representative twice the number of inhabitants required for the first representative, so that the mean increasing number for every additional representative shall be twice the number required for the first or one representative." Article 11th of Part 2 of the New Hampshire Constitution pro-

1. Hancock is in the 11th State Senatorial District and had a population of 722 according to the federal census of 1960.

vides that the legislature shall authorize towns or wards having less than the number of inhabitants necessary to entitle it to one representative to elect a representative "such proportionate part of the time as the number of its inhabitants shall bear to the requisite number established for one representative" but "each town and ward shall be entitled to representation in at least one session in every ten years."

Pursuant to these constitutional mandates the legislature in 1961 passed Chapter 275 of that year, Laws of 1961 page 576, apportioning representatives to the General Court among the several towns and wards. It fixed the basis for apportionment as one representative from any town or ward having 822 inhabitants, and on that basis fixed the number of representatives to be elected from each town or ward having that many inhabitants or more. It fixed the election years in the decade to follow in which towns having fewer inhabitants than 822 were to elect representatives, the smallest towns electing only to one legislature out of the 5 to be called in the decade and the larger towns, such as Hancock, electing at 4 of the 5 biennial elections during that period.

Thus under the constitutional provisions and the statute a town or ward must have twice as many inhabitants to qualify for each additional seat as are required to qualify for the first seat. And towns (there are no city wards), too small to meet the quota for one seat are entitled to part-time representation in the legislature in proportion to their size with even the smallest towns (Hart's Location and Ellsworth have fewer than 10 inhabitants, 7 and 3 respectively), electing a representative at least once in each decade. In consequence in any given session of the House of Representatives towns not entitled to full-time representation are either over represented or not represented at all, and moreover the less than 100 inhabitants of the unincorporated townships, grants, purchases and

locations clustered for the most part in the White Mountains, never have any representation in the House whatsoever.[2]

Extended discussion and analysis is not needed to show that the New Hampshire system for electing the members of its House of Representatives may very well fall short of the federal constitutional goal of equal representation for equal numbers of people. See Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964). However, the Supreme Court of New Hampshire in the first Levitt case cited above did not strike the state system for electing representatives down as in violation of the Federal Constitution although it did say that the plaintiff was not alone in believing that the state system could be improved upon. Levitt v. Attorney General, 104 N.H. 100, 108, 179 A.2d 286, 180 A.2d 827 (1962). It said that the plaintiff's "forum might better be a constitutional convention than a court." Ibid.

The New Hampshire method for electing State Senators is unique. Article 25th of Part 2 of the State Constitution provides that the senate shall consist of 24 members to be elected every two years and Article 26th provides: "And that the state may be equally represented in the senate, the legislature shall, from time to time divide the state into twenty-four districts, as nearly equal as may be without dividing towns and unincorporated places; and in making this division, they shall govern themselves by the proportion of direct taxes paid by the said districts, and timely make known to the inhabitants of the state the limits of each district." This method of selection of state senators, as the Supreme Court of New Hampshire pointed out in the second Levitt case cited above 104 N.H. at page 245, 182 A.2d 897 carries the principle of "no taxation without representation" to its ultimate conclusion. That court, however, was unable to discern that the system in fact produced an imbalance in urban, suburban and rural representation, or an impermissible classification or

---

2. Perhaps disenfranchising the voters in these communities is *de minimis*.

invidious discrimination, or an unrepresentative selection for the upper house. Wherefore the court held that the method for selecting state senators did not violate the Equal Protection Clause of the Fourteenth Amendment. However, Chief Justice Kenison who wrote the opinion of the court said that he and some of his associates were not "enchanted" with the method of determining senatorial districts.

We entertain serious doubt of the federal constitutional validity of the New Hampshire method for selecting the members of the legislature, particularly of the method employed for electing the members of the lower house. Perhaps if the lower house represented the inhabitants of the state with reasonable accuracy the method of selecting state senators on the basis of direct taxes paid might not run afoul of federal constitutional principles. The Supreme Court has not yet said that both houses of a bicameral state legislature must represent inhabitants. But we think it doubtful indeed that the method for electing the membership of the lower house would survive the scrutiny of the Supreme Court of the United States in the light of the principles enunciated in Wesberry v. Sanders, supra, decided after the decisions of the Supreme Court of New Hampshire in the Levitt cases.

But we take judicial notice that delegates have been elected to a constitutional convention which convened on May 13, this year and is now in session. Moreover Chapter 186 of the New Hampshire Laws of 1963 established a commission to study the state constitution and recommend amendments and that commission in its published report introduced into evidence discussed the federal constitutional questions posed by the state constitutional provisions involved in this litigation and recommended their amendment. Under these circumstances this court will not now enter the delicate area of federal-state relations and undertake to decide the federal constitutional issues tendered by the plaintiff's complaint. We think it uncalled for and unwise for a federal court to act upon the validity of state constitutional provisions when the prospect of change in these provisions by state action is imminent. In the exercise of its discretion this court, while retaining its jurisdiction, will for the present withhold decision of the constitutional questions presented.

An appropriate order will be entered.