Hillsborough,
No. 5253.

ALBERT LEVITT

*v.*

WILLIAM MAYNARD, *Attorney General*
and
ROBERT L. STARK, *Secretary of State.*

Filed May 29 and July 7, 1964.
Submitted July 13, 1964.
Decided July 16, 1964.

*Albert Levitt*, pro se, and *Maurice M. Blodgett* for the plaintiff.

*William Maynard*, Attorney General, and *William J. O'Neil*, Assistant Attorney General for the defendants.

PER CURIAM. The general census of the inhabitants of this state taken by authority of the United States for the year 1960 showed a total population for the state of 606,921. It further disclosed that the populations of the Congressional Districts established in accordance with RSA 63:4 and 5 were as follows: First District, 331,818; Second District, 275,103. U. S. Bureau of the Census, Congressional District Data Book (Districts of the 88th Congress) 294 (1963). Although for reasons which do not appear, the parties originally agreed to slightly different figures for the two districts, the defendants for purposes of their argument have adopted the figures quoted above. The plaintiff has offered no explanation for his suggestion based upon the previously agreed figures that "51 inhabitants of the state . . . are completely deprived of . . . representation." We are satisfied that the figures stated above are accurate. See *Wesberry* v. *Sanders* (appendix to opinion of Mr. Justice *Harlan*) 84 S. Ct. 526, 551-552.

The plaintiff relies upon the proposition stated in *Wesberry* v. *Sanders, supra*, 84 S. Ct. 526, 530, that "the command in Art.

I, *s.* 2 [of the Constitution of the United States] means that as nearly as practicable one man's vote in a congressional election is to be worth as much as another's." He argues that as between the two Congressional Districts of this state the command of the Constitution is not observed, because a Congressman from the First District represents 56,715 more inhabitants of the state, or 9.34% more of the total population of the state, than does a Congressman from the Second District. This he asserts is an unconstitutional dilution of the votes of voters in the one district as compared with the other.

We do not stop to consider the question of the plaintiff's standing to present the question (see *Baker* v. *Carr*, 369 U. S. 186, 206) where more rather than less weight results to votes cast in the Second District where he resides, since we are of the opinion that the discrepancy complained of is not so great as to require a finding that it produces gross disproportion of representation (*Maryland Committee* v. *Tawes*, 84 S. Ct. 1442, 1451, decided June 15, 1964) or invidious discrimination between the respective voters of the two districts. *Reynolds* v. *Sims*, 84 S. Ct. 1362, 1381, decided June 15, 1964.

As pointed out by the appendix to Mr. Justice *Harlan's* dissenting opinion in *Wesberry* v. *Sanders, supra,* the difference in the populations of the two districts is 56,715. As there indicated, of the fifty states only two (North Dakota and Maine) show a smaller discrepancy between their largest and smallest districts, and only five show a discrepancy of less than 100,000. As demonstrated elsewhere, the ratio of the most populous (First) to the least populous (Second) district in New Hampshire of 1.2 to 1, as well as the per cent of variation from state average of its largest and smallest districts (9.3%), is smaller than in the other states except for three, even after redistricting by some of them since the 1960 census. 27 Law and Contem. Problems, 402 (Table III).

The dissenting opinion of Mr. Justice *Harlan* in *Wesberry* v. *Sanders, supra,* indicates that as of February 17, 1964 he considered a discrepancy of less than 100,000 in Congressional districting to be within the ambit of districts composed "as nearly as is practicable" of equal population, within the meaning of the majority opinion of the court in that case. We find nothing in the cases relating to apportionment for purposes of election of state legislators decided since that date to require a different view. See *Reynolds* v. *Sims*, 84 S. Ct. 1362; *WMCA,*

*Inc.* v. *Lomenzo*, 84 S. Ct. 1418; *Maryland Committee* v. *Tawes*, 84 S. Ct. 1442; *Davis* v. *Mann*, 84 S. Ct. 1453; *Roman* v. *Sincock*, 84 S. Ct. 1462; *Lucas* v. *Forty-Fourth General Assembly*, 84 S. Ct. 1472 (all decided June 15, 1964).

We recognize however that RSA 63:4 and 5 reflect an apportionment established more than a decennium ago, and that the United States Supreme Court has stated that not being "a reasonably current scheme of . . . representation" such a statute is "constitutionally suspect." *Reynolds* v. *Sims, supra*, 84 S. Ct. 1362, 1393. In the case last cited the several states were enjoined to "make an honest and good faith effort to construct districts . . . as nearly of equal population as is practicable" for purposes of election to state legislatures. No more strict standard is suggested for the creation of Congressional Districts. "Mathematical exactness or precision is hardly a workable constitutional requirement." *Id.*, 1390; *Roman* v. *Sincock, supra*, 84 S. Ct. 1462, 1470.

*Reynolds* v. *Sims* likewise teaches us that even when an apportionment has been held unconstitutional, "equitable considerations might justify a court in withholding . . . immediate effective relief" — "as where an impending election is imminent and a state's elective machinery is already in progress." These circumstances presently exist in this case; and even if the statute in question were thought to be constitutionally defective they would counsel the court "to avoid a disruption of the election process which might result from requiring precipitate changes that could make unreasonable or embarrassing demands on a state in adjusting to the requirements of the court's decree." *Reynolds* v. *Sims, supra*, 84 S. Ct. 1362, 1394; *WMCA, Inc.* v. *Lomenzo, supra*, 84 S. Ct. 1418, 1429. See order of July 13, 1964 in *Levitt* v. *Stark* (D. N.H.) 233 F. Supp. 566.

We take notice that the Constitutional Convention of this state, which adjourned as recently as July 8, 1964, has twice met to consider in the light of recent opinions of the United States Supreme Court, the revision of state constitutional provisions relating to representation in the houses of the state Legislature. Such attention to the mandates of that court suggests that the Legislature of this state which will assemble on January 6, 1965, may be expected to give early consideration to reapportionment of Congressional Districts now "constitutionally suspect." *Reynolds* v. *Sims, supra*, 1393. We do not assume that the Legislature will be less attentive to its responsibilities than was the

Constitutional Convention, or that it will fail to implement the holdings of the highest court of the land by such amendment of the statute establishing Congressional Districts as appears to be appropriate.

Reapportionment "is primarily a matter of legislative consideration and determination, and . . . judicial relief becomes appropriate only when a legislature fails to reapportion according to Federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so." *Reynolds* v. *Sims*, *supra*, 1394.

The petition for injunctive relief is denied. We retain jurisdiction of the petition for declaratory judgment pending action by the 1965 Legislature. See *Levitt* v. *Stark* (D. N.H.) 233 F. Supp. 566 decided May 20, 1964; Journal of the Constitutional Convention for May 21, 1964, *p.* 13, *et seq.* The orders are

*Petition for declaratory relief continued;*
*Petition for injunctive relief denied.*