Merrimack,
No. 5587.

## Thomas W. Gerber *v.* John W. King & a.

Argued January 6, 1967.
Decided January 13, 1967.

*Orr & Reno* and *Malcolm McLane* ( *Mr. McLane* orally ), for the plaintiff.

*George S. Pappagianis*, Attorney General ( by brief and orally ), for the defendants.

*Sheehan, Phinney, Bass & Green* and *Kimon S. Zachos* ( *Mr. Zachos* orally ), for Stewart Lamprey and Walter R. Peterson, as amici curiae.

DUNCAN, J. At the November 3, 1964 election, the voters approved by requisite vote an amendment to Part Second, Article 100 of the Constitution, authorizing the proposal of amendments to the Constitution, by the General Court. RSA, Const. Pt. II, *Art.* 100 ( supp ). At the 1965 session of the General Court, a concurrent resolution, voted upon by both houses, was intended to propose constitutional amendments which would authorize annual sessions of the Legislature. See H. J. Jan. 1965 Session, *pp.* 796-799. The resolution, in amended form was reported into the House upon the next to the last day of the session. *Id.*, *pp.* 1433-1436. Although it was voted upon by both branches of the Legislature upon that same day, the measure voted upon by the House omitted certain provisions contained in the measure upon which the Senate acted. S. J., Jan. 1965 Session, *pp.* 1248-1256. Furthermore, while both included provisions for amendment of Part Second, Article 19, limiting the power of the House to adjourn itself, neither contained provision for amendment of Part Second, Article 36, which imposes a corresponding limitation upon the power of the Senate to adjourn itself.

At the Special Session of 1966, held on June 13, 1966, a concurrent resolution having a similar purport, but providing for amendment of Article 36, as well as Articles 3, 15 and 19, was adopted by both houses of the Legislature. It provided for submission to the voters at the November 1966 election of the

following question, which was in the form originally proposed by the amended concurrent resolution before the 1965 session: "Do you favor having the legislature meet in two annual sessions with a total limit of ninety days but no limit on time of adjournment?"

The question was submitted to the voters at the election of November 8, 1966, as Question 8 on a special ballot relating to proposed amendments to the Constitution. Following determination that the vote upon this question was 109,487 in the affirmative and 53,792 in the negative, the Governor on November 16, 1966 proclaimed adoption of the several amendments proposed by the Legislature.

The petition now before this court alleges that the question submitted to the voters incorrectly stated the effect of the proposed amendments, and failed to give the voters an accurate idea of the question to be voted upon. It seeks a declaratory judgment as to the validity of the adoption of the amendments involved.

The contention made in support of the petition is that an affirmative vote on the question before the voters was a vote for a change which the amendments proposed by the Legislature would not accomplish. Analysis of the question voted upon confirms this view.

The question clearly called for an expression of preference as to whether "annual sessions" of the Legislature should be instituted. The reference to "two" annual sessions, in the context in which used, gave rise to obscurity which could have been obviated had the question read "two annual sessions in each biennium."

A more serious defect in Question 8 arises out of the remaining language of the question: "with a total limit of ninety days but no limit on time of adjournment." To a voter unfamiliar with legislative procedures, this language would suggest the amendment would limit the two annual sessions to a total of ninety calendar days, but authorize the Legislature to adjourn at any time or times during the two sessions.

Voters who examined the "Voters' Guide" would have learned that the concluding phrase of the question "but [with] no limit on time of adjournment," had reference to elimination of the provisions of Part Second, Articles 19 and 36 by which the length, rather than the "time" of adjournment is limited to a period no longer than "five days at a time." Const., Pt. II, *Arts.* 19, 36.

They would have received no enlightenment, however, as to the intended significance of the expression "two annual sessions with a total limit of ninety days," since the Guide served to confirm any misunderstanding of this expression by stating that "the legislature meets once every two years for a period of ninety days," and that if the amendment should be adopted, "will continue to meet no more than ninety days in the two-year period .... divided possibly ... 45 days each year."

In point of fact, the amendment to Article 15 as proposed by the Legislature made no change in the existing ninety-day limitation upon the payment of mileage for actual attendance upon legislative days, beyond removing the restriction of the limitation to the *first* ninety legislative days of the session or to July 1 next after assembly (Const., Pt. II, *Art.* 15 (supp)), and making the ninety-day limitation applicable to two annual sessions in any biennium. Thus what was to be established by amendment of Part Second, Article 15 was not a limitation upon the length of "two annual sessions" to ninety calendar days, as the question to the voters suggested, but a limitation upon mileage payments to ninety legislative days in any biennium.

In this connection, Question 8 was misleading in two respects. It failed to disclose that the limit referred to was a limit of ninety "legislative" days, roughly equivalent to 180 calendar days; and it conveyed the idea that a new limit would be imposed upon the length of "two annual sessions" when actually it would continue to apply to mileage payments only, although extended to the span of two annual sessions. We consider that the ordinary voter would have understood the proposal to be one to limit to ninety calendar days the length of two annual sessions together; and that the vote upon such a proposal had no meaningful relationship to the amendment of Part Second, Article 15 in fact proposed by the Legislature.

The argument is made, in effect, that the phrase "with a total limit of ninety days" was a shorthand expression for the limit upon "the payment of mileage to 90 legislative days of a regular session" which was approved by the voters in 1960. See N. H. Manual for the General Court, No. 37 (1961), *p.* 621. The suggestion is that voters in 1966 who previously voted in 1960 would have so interpreted the 1966 question. Aside from the impossibility of determining how many of the 163,279 voters who voted upon Question 8 in 1966 were among the 221,827 who voted upon Question 1, in 1960, the argument is not persuasive.

The voters of 1960 were as likely to be misled by the question of 1966 into thinking that the limitation upon the payment of mileage adopted in 1960 was now to be converted into a calendar day limitation upon the length of legislative sessions, in view of the language employed in Question 8 of "two annual sessions with a total limit of ninety days." Although the voters did, as amici curiae argue, indicate that they wanted "two annual sessions," if limited to ninety days in all, the amendments which the Legislature proposed would not have embodied in the Constitution the changes which the voters must be taken to have approved.

While we continue to adhere to the proposition that every reasonable presumption is to be indulged in favor of the validity of an amendment to the Constitution following its ratification by the voters ( *Concrete Co.* v. *Rheaume Builders*, 101 N. H. 59, 61; *Opinion of the Justices*, 101 N. H. 541, 542; *Penrod* v. *Crowley*, 82 Idaho 511 ), we likewise continue to be governed by the principle that the " clearly expressed intent " of the voters must prevail over any undisclosed purpose. *Concrete Co.* v. *Rheaume Builders, supra.* As expressed by their vote of November 8, 1966, the intent of the voters was to impose a "total limit of ninety days" upon "two annual sessions." This was the purport of the language which they ratified and adopted; but it was not the effect of the amendments to Articles 3 and 15 which the Legislature proposed. It follows that the proposed amendments of Articles 3 and 15 were not effectively approved by the voters as required by Articles 99 and 100 of Part Second of the Constitution. The first question reserved and transferred by the Superior Court is answered in the negative.

The second transferred question relates to the concluding phrase of Question 8 by which approval or disapproval was sought of having the Legislature meet for two annual sessions of limited duration but with "no limit on time of adjournment." The plaintiff has stated in this court that he raises "no question as to the effectiveness of Question No. 8 in posing the issue of adjournment of the House and Senate without limit on the length of time of adjournment." The defendants and amici suggest that the concluding part of the question is separable and urge that the amendments of Articles 19 and 36 were validly adopted even if the amendments of Articles 3 and 15 should fail. See *People* v. *Kerner*, 32 Ill. 2d 212.

Although the amendments to Articles 19 and 36 were

incorporated for submission to the voters in a single question dealing primarily with provision for annual sessions, the power to adjourn without limit upon the length of adjournment appears to have no peculiar relationship to annual sessions. The "Voters' Guide" clearly pointed out that this power would permit adjournment "as needed" and without unnecessary "expense when no work needs to be done." No reason is suggested why the voters would have withheld approval of the amendments to Articles 19 and 36, had they been presented independently with no expectation that biennial sessions would be abolished. The failure to adopt the amendment to Article 15 leaves unchanged the restrictions which that Article places upon the payment of mileage. Since amendment of Articles 19 and 36 was "not dependent upon nor interwoven with" amendment of other Articles, it was unaffected by the failure to effectively amend Articles 3 and 15. *Carpenter* v. *State*, 179 Neb. 628, 635. *Cf. Opinion of the Justices*, 106 N. H. 202, 207; *Public Service Co.* v. *State*, 101 N. H. 154, 163. It is therefore held that the proposed amendments to Part Second, Articles 19 and 36 were effectively approved by the voters; and the second question reserved and transferred by the Superior Court is answered in the affirmative.

*Remanded.*

All concurred.