Request of the Governor and Council
No. 81-138

OPINION OF THE JUSTICES

May 27, 1981

The following request of the Governor and Council for an opinion of the justices was adopted on April 9, 1981, and filed with the supreme court on April 24, 1981:

"Whereas, prior to November, 1980, Article 99 of the Part Second of the New Hampshire Constitution required that the General Court call a constitutional convention if petitioned to do so by a majority of those voting on the question of whether constitution revision was needed, and required the affirmative vote of 2/3 of those voting to adopt any constitutional amendment;

"Whereas, prior to November, 1980, Article 100 of the Part Second of the New Hampshire Constitution provided that the General Court could submit to the people at any time the question of whether to hold a constitutional convention, but required that the question be submitted at least every 10 years; and further, that amendments proposed by a constitutional convention or by 3/5 of each house of the General Court be submitted to the voters by written ballot, and that such amendments would become part of the Constitution if approved as provided in Article 99;

"Whereas, Article 100 of Part Second of the New Hampshire Constitution was amended on November 4, 1980, by means of ballot question 4, to require that proposed constitutional amendments from the General Court or from a constitutional convention be submitted to the voters by written ballot at the next biennial November election, while retaining the requirement that approval by the voters be as provided in Article 99;

"Whereas, Article 100 of Part Second of the New Hampshire Constitution was amended on November 4, 1980, by means of ballot question 5, to require that constitutional conventions propose amendments by a 3/5 vote of their members, while retaining the requirement that approval by the voters be as provided in Article 99;

"Whereas, Article 100 of Part Second of the New Hampshire Constitution was amended on November 4, 1980, by means of ballot question 3, to add the provisions for adopting an amendment by a 2/3 majority of those voting on the question which had previously been in Article 99; and further, that Article 99 was repealed by means of the same ballot question;

"Whereas, these amendments to Part Second of the New Hampshire Constitution became effective on December 10, 1980;

"Whereas, there appears to be a conflict between the various amendments adopted on November 4, 1980;

"Whereas, the Secretary of State is required by RSA 189:22 to furnish copies of the state Constitution to the Board of Education;

"Whereas, the Secretary of State has informed the Governor and Executive Council that he will soon be required to expend state funds for the printing of copies of the state Constitution and is in doubt as to what to do about Article 99 and as to which version of Article 100 he should include in his new printing;

"Whereas, Article 56 of the Second Part of the New Hampshire Constitution provides that no moneys shall be issued out of the state treasury except by warrant under the hand of the Governor, with the advice and consent of the Executive Council;

"Whereas, the Governor and Council are required by RSA 4:15 to assure the prudent and economical expenditure of state moneys;

"Whereas, a printing of a version of the state Constitution which is subsequently determined to be incorrect would result in a waste of state funds since a new printing would thereafter be required, so that the questions about Articles 99 and 100 are important questions of law on a solemn occasion;

"Now, Therefore, Be It Resolved that the Honorable Justices of the Supreme Court of New Hampshire be respectfully requested to give their opinion of the following two questions:

"1. Were the provisions of ballot question 3 effective in removing the references to Article 99 in the amendments to Article 100 adopted by ballot questions 4 and 5?

"2. As Article 100 was amended in 3 different ballot questions on November 4, 1980, how does Article 100 now read?

"And Be It Further Resolved that the Secretary of State be directed to transmit 6 attested copies of this Resolution to the Clerk of the Supreme Court."

The following reply was returned:

*To the Honorable Governor and Council:*

The undersigned justices of the supreme court reply as follows to your request filed in this court on April 24, 1981.

The first question presented asks us to determine whether ballot question 3 was effective in removing the references to Article 99 in the amendments to Article 100 adopted by ballot questions 4 and 5. We answer in the affirmative.

In answering the question presented we are guided by the premise that " '[e]very reasonable presumption both of law and fact is to be indulged in favor of the validity of an amendment to the Constitution . . . after its ratification by the people,' . . . and its

unconstitutionality should not be declared except upon 'inescapable grounds.' " *Opinion of the Justices*, 101 N.H. 541, 543, 133 A.2d 790, 792 (1957) (citations omitted); *see Gerber v. King*, 107 N.H. 495, 499, 225 A.2d 620, 623 (1967).

Ballot question 3 is based on a resolution of the Constitutional Convention of 1974, and ballot questions 4 and 5 are derived from resolutions of the House of Representatives, with the Senate concurring. Ballot question 3 called for the repeal of article 99 of part second of the constitution and provided for the insertion in article 100 of the article 99 requirement of a two-thirds vote of the people for approval of constitutional amendments.

■ "Repealing statutes are subject to the general rules of statutory construction applicable to all legislative enactments. Thus, in determining whether or not a repeal has been effectuated, . . . the legislative history of the act, and the nature of the defect sought to be remedied by its enactment are . . . important factors to be considered by the courts." 1A C. SANDS, SUTHERLAND STATUTORY CONSTRUCTION § 23.06 (3d ed. rev. 1972). These factors are also useful in inquiring into the validity of constitutional amendments.

In explaining resolution 49, which included the wording of ballot question 3, to the 1974 Constitutional Convention, Delegate Tucker stated:

> "The only pertinent provision of Article 99 is that portion that deals with amending by a two-thirds vote. What we would do is simply add to Article 100, section (c), the fact that an amendment would have to be approved 'by two-thirds of the qualified voters present and voting on the subject in the towns, wards and unincorporated places.' "

JOURNAL OF CONSTITUTIONAL CONVENTION 199 (June 12, 1974).

By amendment adopted by the voters in 1964, article 100 was amended generally to include much of the procedure for adopting amendments to the Constitution which until that time had been in article 99. The requirement that all amendments to the Constitution must be approved by two-thirds of the qualified voters present and voting on the subject, however, remained in article 99.

■ We agree that the two-thirds majority vote provision was the only "pertinent" one remaining in article 99, because the right of the people to have submitted to them the question of calling for a constitutional convention was already incorporated in article 100.

*See* JOURNAL OF CONSTITUTIONAL CONVENTION 108–118 (June 2, 1964). Accordingly, we conclude that ballot question 3 repealed article 99 and that the references to article 99 in ballot questions 4 and 5 must be considered to have related to the means of approving constitutional amendments already contained in article 100.

Incorporating the provisions approved by the electorate in 1980 in questions 3, 4 and 5, article 100 now reads as follows:

"[Art.] 100. [Alternate Methods of Proposing Amendments.] Amendments to this constitution may be proposed by the general court or by a constitutional convention selected as herein provided.

(a) The senate and house of representatives, voting separately, may propose amendments by a three-fifths vote of the entire membership of each house at any session.

(b) The general court, by an affirmative vote of a majority of all members of both houses voting separately, may at any time submit the question 'Shall there be a convention to amend or revise the constitution?' to the qualified voters of the state. If the question of holding a convention is not submitted to the people at some time during any period of ten years, it shall be submitted by the secretary of state at the general election in the tenth year following the last submission. If a majority of the qualified voters voting on the question of holding a convention approves it, delegates shall be chosen at the next regular general election, or at such earlier time as the legislature may provide, in the same manner and proportion as the representatives to the general court are chosen. The delegates so chosen shall convene at such time as the legislature may direct and may recess from time to time and make such rules for the conduct of their convention as they may determine.

(c) The constitutional convention may propose amendments by a three-fifths vote of the entire membership of the convention.

Each constitutional amendment proposed by the general court or by a constitutional convention shall be submitted to the voters by written ballot at the next biennial November election and shall become a part of the Constitution only after approval by two-thirds of the

qualified voters present and voting on the subject in the towns, wards, and unincorporated places."

WILLIAM A. GRIMES
MAURICE P. BOIS
CHARLES G. DOUGLAS, III
DAVID A. BROCK
JOHN W. KING

May 27, 1981

The Honorable Joseph M. Eaton filed a memorandum.