Rockingham
No. 81-135

GEORGE H. GRINNELL

v.

THE STATE OF NEW HAMPSHIRE

September 28, 1981

824

*Grinnell & Bureau,* of Derry (*George H. Grinnell* on the brief and orally), for the plaintiff.

*Gregory H. Smith,* attorney general (*Betsy Westgate* on the brief and orally), for the State.

DOUGLAS, J.   Part 2, article 78 of the New Hampshire Constitution provides that "[n]o person shall hold the office of judge of any court . . . after he has attained the age of seventy years." N.H CONST pt. 2, art. 78. When he reached age seventy on December

31, 1980, the plaintiff was required to vacate his office as Justice of the Derry District Court, where he had served since 1951. He filed a petition for declaratory judgment against the State pursuant to RSA 491:22, asserting that the age seventy provision violates the due process and equal protection clauses of the fourteenth amendment to the United States Constitution. The questions raised by the petition were transferred without ruling by *Mullavey, J.*

■■ The State first asserts that it is immune from suit in the courts of this State. We need not pause long to consider this asserted jurisdictional hurdle. RSA 491:22 has long been construed to permit challenges to the constitutionality of actions by our government or its branches. In *Levitt v. Maynard*, 104 N.H. 243, 182 A.2d 897 (1962), brought as a petition for declaratory judgment against the attorney general and the secretary of state, the plaintiff brought a fourteenth amendment due process attack against a provision of our State constitution addressing the apportionment of senatorial districts. We reaffirmed that "[f]or more than half a century pleading and procedure in this jurisdiction has been a means to an end and it should never become more important than the purpose which it seeks to accomplish." *Id.* at 244, 182 A.2d at 898 (quoting *Ricker v. Mathews*, 94 N.H. 313, 318, 53 A.2d 196, 199 (1947)). We have thus granted taxpayers standing to raise constitutional issues by bringing declaratory judgment petitions. *See, e.g., Gerber v. King*, 107 N.H. 495, 497, 225 A.2d 620, 621 (1967).

We note that as recently as 1978, two taxpayers sued the State disputing the constitutionality of a statute that established a maximum fee recoverable by court-appointed attorneys representing indigent criminal defendants. *See Smith v. State*, 118 N.H. 764, 766, 394 A.2d 834, 836 (1978). The attorney general asserted no jurisdictional impediment in that case.

■ While this petition for declaratory judgment should properly have been brought against the secretary of state, we will not dismiss the important constitutional question it raises solely on that ground. *Cf. Carbonneau v. Hoosier Engineering Co.*, 96 N.H. 240, 242, 73 A.2d 802, 805–06 (1950); *Whitcher v. State*, 87 N.H. 405, 406, 181 A.2d 549, 551 (1935).

■ The State next contends that, because all judges serve until seventy, none may decide this case because of an asserted personal interest in prolonging their tenure in office. Neither law nor sound policy will sustain such a sweeping view of disqualification. There is no other State court to which the plaintiff may turn

for answers to his question. The "rule of necessity" has been part of our common law since 1430. *United States v. Will*, 101 S. Ct. 471, 480 (1980) (citing Y.B.Hil. 8 Hen. VI, case 6, f. 19).

> "The Rule of Necessity has been consistently applied in this country in both state and federal courts. In *State ex rel. Mitchell v. Sage Stores Co.*, 157 Kan. 622, 143 P.2d 652 (1943), the Supreme Court of Kansas observed: '[I]t is well established that actual disqualification of a member of a court of last resort will not excuse such member from performing his official duty if failure to do so would result in a denial of a litigant's constitutional right to have a question, properly presented to such court, adjudicated.' "

*United States v. Will*, 101 S. Ct. at 480. In other words, when all judges would be disqualified, none are disqualified. *See Duplantier v. United States*, 606 F.2d 654, 662 (5th Cir. 1979), *cert. denied*, 101 S. Ct. 854 (1981).

■ We now turn to the merits of the plaintiff's fourteenth amendment argument. The age provision was inserted into our constitution on May 7, 1792, by a vote of 2,607 to 912. J. COLBY MANUAL OF THE CONSTITUTION OF THE STATE OF NEW HAMPSHIRE 169 (1902). In interpreting an article in our constitution, "we will give the words the same meaning that they must have had to the electorate on the date the vote was cast." *Smith v. State*, 118 N.H. 764, 768, 394 A.2d 834, 838 (1978); *see, e.g., Opinion of the Justices*, 121 N.H. 480, 431 A.2d 135 (1981) (twelve person jury); *Opinion of the Justices*, 117 N.H. 409, 411, 373 A.2d 1323, 1324 (1977) (regarding N.H. CONST. pt. 1, art. 36); *Keniston v. The State*, 63 N.H. 37, 37–38 (1884) (regarding N.H. CONST. pt. 2, art. 78). Despite other views elsewhere, we do not sit as " 'a continuing constitutional convention.' " *See* R. BERGER, GOVERNMENT BY JUDICIARY 2-3 (1977).

■■ Age alone does not make a group of citizens a suspect class, and therefore does not trigger a stricter review of the purpose and effect of the classification in issue. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 313–14 (1976); *see State v. Elbert*, 121 N.H. 43, 45–46, 424 A.2d 1147, 1149 (1981). Rather, when a constitutional provision is challenged under the due process or equal protection clauses of the fourteenth amendment, we must determine whether the article "rationally furthers *any* legitimate state objective." *Malmed v. Thornburgh*, 621 F.2d 565, 569 (3d Cir.), *cert. denied*, 101 S. Ct. 361 (1980). In *Massachusetts Board of Retirement v. Murgia*, 427 U.S. at 317, the United States

Supreme Court upheld a statute requiring police to retire at age fifty, and in *Vance v. Bradley*, 440 U.S. 93, 112 (1979), the Court upheld a law mandating retirement at age sixty for certain foreign service employees. The goals of high performance, efficiency, and fitness were considered sufficiently related to age to constitute a rational basis for the mandatory retirement statutes.

■ The rationale behind our mandatory retirement provision is revealed in New Hampshire's constitutional history. The concept of separation of powers was absent from the 1776 New Hampshire Constitution. Douglas, *Judicial Review and the Separation of Powers Under the New Hampshire Constitutions of 1776 and 1784*, 18 N.H.B.J. 250, 252 (1977). The government basically consisted of one branch, a bicameral legislature with a house of representatives and a smaller council of twelve. *Id.* There was no separate judicial branch. The appointment of judges, with a seventy-year age cap, was instituted out of dissatisfaction with legislative abuses that resulted from a concentration of power in the legislative branch. An address given before the 1781 constitutional convention explains why New Hampshire citizens wanted an independent judiciary. When the branches of government overlap, "the great barrier against oppression would be at once destroyed: [t]he laws would be made to bend to the will of that power which sought to execute them with the most unbridled rapacity." J. COLBY, *supra* at 102 (1902).

The Constitution of 1784 embodied the principle of separation of powers. Douglas, *supra* at 258. Three reforms were enacted with the purpose of fostering an independent judiciary. Judges were given the constitutional right to permanent and honorable salaries, *see* N.H. CONST. pt. 1, art. 35 and pt. 2, art. 59, were prohibited from holding plural offices, and were granted tenure during good behavior. *Id.* The latter was considered particularly important as a means of ending arbitrary removals. The judges ought "to feel themselves independent and free," and judges would be reluctant "to qualify themselves for such important places, if they were liable to be removed at pleasure." J. COLBY, *supra* at 107. The seventy-year age limit was adopted in 1791 as an integral part of the scheme to maintain judicial independence. The article placed a neutral outside limit on tenure which otherwise was to last as long as the judge maintained "good behavior." Appointments with a seventy-year age cap guarded against the consequences flowing from the previous system, one which was marked by unfettered discretion in the legislature.

We cannot conclude that it was irrational to build confidence in

the continuing vitality of our judicial branch of government by "good behavior" appointments, with an appropriate age limitation. That is not to say that the mandatory retirement provision does not deprive the bench of many able jurists who are forced to retire at the height of their intellectual creativity, when they are making an inestimable contribution to the people we serve. Any line drawn on the basis of age will likely have that effect. *See* 29 U.S.C.A. § 631(a) (1981 Supp.) (federal age discrimination act only applies to persons at least forty years of age but less than seventy years of age).

▇▇ The Age Discrimination in Employment Act (ADEA), 29 U.S.C.A. § 623, makes it unlawful for an employer to discriminate on the basis of an individual's age. The statute expressly applies to states and political subdivisions in their status as employers. 29 U.S.C.A. § 630. No relief may be granted to the plaintiff under the ADEA, however, because that act applies only to individuals under age seventy.

*Petition dismissed.*

All concurred.